## Hoover v. Amsler

*C. Scott Waters,* for plaintiff.
*Joseph Melody,* for defendant.

RAUP, *P.J.,* January 5, 1990 — The court must determine the definition of "actual and reasonable expenses of reproducing the charts or records" as it relates to the authority of a hospital to charge a patient or his agent for copying costs under 42 P.S.

§6152(a). More specifically, the court must decide whether Geisinger Medical Center is overcharging patients and their agents for reproducing medical records which are necessary for use in litigation.

The underlying case is a medical malpractice lawsuit filed in July 1988. As the patient was a recipient of medical care at the Geisinger Medical Center, which maintained medical records regarding her medical care at Geisinger, the medical records custodian of Geisinger was served with a subpoena and records deposition notice requesting copies of plaintiff's medical records.

On September 19, 1989, plaintiff's counsel received a letter from Geisinger, stating that they elected to withhold Ms. Hoover's medical records pending payment of $145.

On September 25, 1989, plaintiff filed a petition to compel production of Ms. Hoover's medical records at actual and reasonable cost. The petition is presently before the court.

The relevant statutory provisions are:

"It shall be deemed a sufficient response to the subpoena if the health care facility notifies the attorney for the party causing service of the subpoena . . . of the health care facility's election to proceed under this subchapter and of the estimated actual and reasonable expenses of reproducing the charts or records." 42 Pa.C.S. §6152(a).

"A patient shall have the right of access to all of his medical charts and records and to photocopy the same for his own use." 42 Pa.C.S. §6155(a).

"Patient or patient designees shall be given access to or a copy of their medical records . . . the patient . . . may be charged for the cost of reproducing such copies; however, such charges shall be reasonably related to the cost of making the copy." 42 Pa.C.S. §115.29.

"The hospital shall provide to the patient, or the patient designee, upon request, access to all information contained in his medical records, unless access is specifically restricted by the attended physician for medical reasons." 28 Pa.C.S. §103.22(15).

The court's first consideration is whether plaintiff's failure to take depositions within 15 days of the filing of Geisinger's answer operated as an admission of all the averments, pursuant to Pa.R.C.P. 209. Rule 209 states:

"If, after the filing and service of the answer, the moving party does not within 15 days:

"(a) Proceed by rule or by agreement of counsel to take deposition on disputed issues of fact; or

"(b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule); the respondent may take a rule as of course on the moving party to show cause why he should not proceed, as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as above provided, within 15 days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule."

Geisinger asserts that under Rule 209, if a petitioner fails to take action under subsection (a) or (b) within 15 days after answer is filed, he is bound by the respondent's averments of fact. In *Maurice Goldstein Co. Inc. v. Margolin,* 248 Pa. Super. 162, 166, 374 A.2d 1369, 1371 (1977), the Superior Court held that Rule 209 clearly does not mean this. The

Superior Court held that Rule 209 allows a respondent to hurry the proceedings along, instead of having to wait on a petitioner. In order for action to be taken under Rule 209, a rule must be taken by the respondent. Until one of the parties acts as provided by the rule, the court should not act under Rule 209. The respondent's motion, to hold plaintiff to the facts in the motion documents, is not properly before us.

The court must now make a determination as to the meaning of the statutory language "estimated actual and reasonable expenses of a hospital to reproduce charts or records." Pursuant to 42 Pa.C.S. §6152(a), a hospital may respond to a subpoena duces tecum by notifying the attorney for the party causing service of the subpoena, of the hospital's election to proceed under section 6152 and of the "estimated actual and reasonable expenses" of reproducing the charts or records.

Plaintiff contends that the language of section 6152 limits a hospital to charging the cost of photocopying. To this effect, plaintiff has provided evidence of the prevailing market charges for duplication of records. The respondent hospital contends that the cost can be computed by a formula which would include reference to the salaries of records personnel and records supplies and equipment and general overhead.

There is no Pennsylvania law on the subject. The heart of plaintiff's argument is that since the hospital already owes a legal duty under 28 Pa. Code §115.1 "to keep medical records confidential, to provide office space, to preserve and maintain records, to have adequate storage space, to preserve equipment, and pay competitive salaries necessary for the overall operation of its medical records depart-

ment," the only costs that may be reimbursed by the hospital are the actual costs of reproduction. Furthermore, plaintiff avers that JCAHO standards for Geisinger reveal that medical records have many purposes separate from that of providing access of records to patients under 42 Pa.C.S. §6155(b). Those purposes include:

"To serve as a basis for planning patient care and for continuity in the evaluation of the patient's condition and treatment.

"To furnish documentary evidence of the course of the patient's medical evaluation, treatment, and change in condition during the hospital stay, during an ambulatory care of emergency visit to the hospital, or while being followed in a hospital-administered home care program.

"To document communication between the practitioner responsible for the patient and any other health care professional who contributes to the patient's care.

"To assist in protecting the legal interests of the patient, the hospital, and the practitioner responsible for the patient.

"To provide data for use in continuing education and in research." See JCAHO standard MR.1.2.

Consequently, plaintiff maintains that patients and their agents should not bear the brunt of the cost of maintaining the medical records department whose main purpose is not providing access to patients.

Geisinger claims that the estimated actual and reasonable expenses go to the hospital's maintenance of a medical records department, including the salaries of the department's staff. Geisinger asserts that "unlike a commercial copying service, a hospital must invest significant financial resources

in providing space for this department, ensuring that adequate measures are taken to preserve, organize and store medical records, in supplying equipment for the personnel who will collect, review and file the information, and in paying competitive salaries for these employees.'' Geisinger's argument continues with a defense of their costs for salaries and equipment costs.

The legislation in question thrusts the court into an unfamiliar role of overseeing the fixing of costs of a service — a function which is usually and best left to market considerations and pressures. Undoubtedly the legislature, in approving the enactment, wished to provide hospitals with a fair compensation for the service they provide in giving to patient-litigants copies of appropriate medical records, while at the same time preventing those institutions from imposing unreasonable fees which would have a chilling effect on the ability of the patient-litigant to pursue legal remedies.

The court can best discharge its responsibility in this case by attempting to refine the statutory definition and to give some guidance to the parties with respect to the manner in which the fees in question should be calculated.

Had the legislature intended to limit hospitals to a medical record fee which would be comparable to the market fees ordinarily charged by photocopy businesses, we believe that the legislature would have chosen language distinct from that which appears in the enactment above. The concept of actual and reasonable expenses must certainly allow the hospital to charge patients who are seeking copies of their medical records a fee which is reasonably related to the actual labor, equipment and supplies which are used by the facility in providing copies of

the medical records to the patient. However, the hospital should not be allowed to subsidize other record-keeping functions and responsibilities by charging inflated per page costs to the patient who is seeking a copy of his record. If, in an appropriate case, the hospital were, for example, to be able to demonstrate that two employees work full-time in answering requests of patients for medical records, and that one-third of the record-copying supplies and equipment are attributable to this function, then the salary and benefits of those employees, as well as the proportionate cost of equipment and supplies, together with an appropriate figure for a proportion of supervision and overhead would provide a base figure to be divided by the anticipated number of pages that would be provided to patients in the course of a year. From these figures a formula could rather easily be developed which would, to our mind, meet the limitations envisioned by the legislature. If the hospital had available to patient-litigants the formula by which the fee is computed each year disputes such as this could be avoided.

Plaintiff has indicated that she desires to pursue discovery in order to determine whether the costs being charged by Geisinger Medical Center comply with the statutory standard. It very well may be that the construction which we have articulated in this opinion may avoid the necessity for such discovery. If it does not, however, we believe that plaintiff should have the right to pursue appropriate inquiry through the discovery rules. Since the Geisinger Medical Center is not a party to this action, any costs which are precipitated by plaintiff in the course of such discovery would be ordered reimbursed to the hospital upon request.

## ORDER

And now, January 5, 1990, for the reasons set forth in the foregoing discussion, it is hereby ordered and directed that plaintiff's motion to compel is denied. Plaintiff will be allowed to take discovery on the limited issue defined above.